UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

BRANDON G. BAUMEISTER,

                    Plaintiff,

          v.                                                23-CV-1150-LJV
                                                            DECISION & ORDER
ERIE COUNTY, et al.,

                    Defendants.

———————————————————

          On September 14, 2023, the plaintiff, Brandon G. Baumeister, commenced this

action by filing a complaint in New York State Supreme Court, Erie County.  *See* Docket

Item 1-10.  The complaint named numerous defendants: Erie County, Erie County

Sheriff John C. Garcia, and several Erie County sheriff's deputies (the "Erie County

defendants"); the City of Buffalo and the Buffalo Police Department (the "Buffalo

defendants"); Niagara County, Niagara County Sheriff Michael J. Filicetti, and several

Niagara County sheriff's deputies (the "Niagara County defendants"); the City of

Niagara Falls and the Niagara Falls Police Department (the "Niagara Falls defendants");

the Town of Lewiston, the Lewiston Police Department, and several Town of Lewiston

police officers (the "Town of Lewiston defendants"); the Village of Lewiston; and two

New York state troopers (the "New York defendants").[1]  *Id*.  About six weeks later, the

———————————

[1] The complaint also brings claims against "John Doe" defendants, who are
"supervisor[s] or employee[s]" of each of the municipal defendants.  Docket Item 1-10.
Baumeister asserts all his claims against the sheriffs, deputies, and officers in their
individual and official capacities.  *See id.*

Town of Lewiston defendants, with the consent of the other defendants, removed the case to this Court.  *See* Docket Items 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, and 1-8.

On November 3, 2023, the Erie County defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Docket Item 6.  Several days later, the New York defendants, the Town of Lewiston defendants, the Niagara Falls defendants, the Niagara County defendants, and the Buffalo defendants each moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).[2]  Docket Items 11, 13, 16, 17, and 18.  Baumeister then responded to each of the motions, Docket Items 65, 66, 67, 68, 69, 70, and 71, and the defendants replied, Docket Items 76, 77, 78, 79, and 80.[3]

For the reasons that follow, this Court grants the defendants' motions in part and denies those motions in part.  More specifically, the motions are granted with respect to the Buffalo Police Department, the Lewiston Police Department, and the Niagara Falls Police Department, and the claims against those defendants are dismissed.  The official capacity claims for violations of 42 U.S.C. § 1983 also are dismissed.  The first and fourth causes of action (excessive force and failure to intervene under section 1983) may proceed against Deputy Nicholas Cervoni, Deputy Justin Bauer, Deputy Paul Kieffer, Deputy David Liskiewicz, Deputy Robert Lazarcyzk, Deputy Kuhn, Deputy Ellis,[4] Sergeant Christopher Soluri, Police Officer Jonathan Emmons, Police Officer Joshua

---

[2] The Village of Lewiston has not yet responded to the complaint.  Its deadline to do so—after requesting and receiving several extensions of time—is November 11, 2024.  *See* Docket Items 56, 58, 61, 62, 72, 73, 82, 83, 85, 86, 87, 88, 90, and 91.

[3] The Erie County defendants, however, did not reply, and the time to do so has passed.

[4] Baumeister does not identify the first names of Kuhn and Ellis.

Belin, Captain Michael Salada, Lieutenant Sean Furey, Deputy James Villani, Deputy Justin Schwarzmueller, Deputy Marylynn Stephenson, Police Officer Adam Moen, Police Officer Michael A. Kidder, Jr., and the John Doe officers (collectively, the "individual defendants") but are dismissed as to Garcia, Filicetti, Erie County, Niagara County, the City of Buffalo, the City of Niagara Falls, the Town of Lewiston, and the Village of Lewiston[5] (the "municipal defendants").  The second and third causes of action (assault and battery under New York state law) may proceed against the individual defendants and the City of Buffalo, the City of Niagara Falls, the Village of Lewiston, and the Town of Lewiston, but are dismissed as to Erie County, Niagara County, Garcia, and Filicetti.  The fifth, sixth, and seventh causes of action (*Monell* claims, supervisory liability under section 1983, and negligence under New York state law) are dismissed without prejudice to Baumeister's filing a motion to amend his complaint to correct the deficiencies outlined below by October 21, 2024.[6]  Finally, Baumeister's claim for punitive damages may proceed against the individual defendants but is dismissed as to the municipal defendants.

---

[5] Although the Village of Lewiston has not yet moved to dismiss, this Court sua sponte dismisses some of the claims against it based on the arguments made by other defendants that apply equally to the Village of Lewiston as well as Baumeister's responses to those arguments.  *See Piuggi v. Good for You Prods. LLC*, 2024 WL 3274638, at *5 (S.D.N.Y. July 2, 2024) ("[A] district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted as long as the plaintiff [has had] an opportunity to be heard." (internal quotation marks omitted) (collecting cases)).

[6] The Court notes that a motion to amend filed in this district "must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion," and the amendments must "be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings that are visible in both electronic and paper format."  Loc. R. Civ. P. 15(a)-(b).

## FACTUAL BACKGROUND[7]

On September 18, 2022, "at approximately 2:00 a.m.," Baumeister was driving "a black 2020 GMC Yukon on Kentucky Street" in Buffalo, New York, "when an Erie County Sheriff's [o]fficer began pursing him."  Docket Item 1-10 at ¶ 59.  Law enforcement officers from Erie County, the Erie County Sheriff's Office, the Buffalo Police Department, the Lewiston Police Department, the Niagara County Sheriff's Department, the Niagara Falls Police Department, and the New York State Police then "engaged in a high-speed and dangerous chase of [Baumeister] through several streets in the City of Buffalo, Town of Cheektowaga, Town of Tonawanda, Town of Grand Island, Town of Niagara, Village of Lewiston[,] and City of Niagara Falls."  *Id.* at ¶ 60. The officers "improperly and recklessly pursued [Baumeister] in violation of their respective department policies and the law in the high-speed pursuit and chase across multiple counties, including outside their respective jurisdictions."  *Id.* at ¶ 61.

Baumeister "attempted to surrender to [the officers] in the Village of Lewiston, but as he attempted to do so, [the] police officers began violently striking the windows of the vehicle [Baumeister] was in."  *Id.* at ¶ 63.  The "[p]olice officers had their handguns drawn and fired a shot through the window of [Baumeister's] vehicle," shattering that window.  *Id.*   Because Baumeister "fear[ed] for his life . . . , he resumed driving through the Village of Lewiston and the City of Niagara Falls."  *Id.*   He finally "came to a stop on

---

[7] Unless otherwise noted, the following facts are taken from the complaint, Docket Item 1-10. On a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c), the Court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

Buffalo Avenue near Point Avenue and South 91st Street in Niagara Falls."  *Id.* at ¶ 64.

Baumeister "exited the vehicle with his hands up, was unarmed[,] and was fully

complying with the order of officers."  *Id.*

Some combination of the individual defendants then "exited their police vehicle[s]

and violently tackled [Baumeister] to the ground."  *Id.* at ¶ 65.  They "excessively beat

[Baumeister] while he was on the ground, punching, striking, and kicking him repeatedly

in the legs, arms, back, shoulders, neck[,] and head."  *Id.* at ¶ 67.  As a result,

Baumeister suffered numerous injuries, including:

> a concussion, fractured nose, disc herniations in neck, neck injuries, left
> shoulder injury, left arm injury, upper extremity injury, injuries to bilateral
> lower extremities, sprained right ankle, rib injuries, injury to sternum, injury
> to left eye/orbit and left cheek, face, head, injuries to teeth, injuries to both
> wrists, injuries to upper, middle, and lower back, soreness in kidneys,
> intense and frequent headaches, difficulty breathing, and . . . anxiety[.]

*Id.*  Baumeister "was hospitalized as a result of these injuries."  *Id.*

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)],

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*,

550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

(quoting *Twombly*, 550 U.S. at 556).  The same standard applies to a motion for

judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

The defendants argue that dismissal of the various claims is warranted for several reasons.  *See generally* Docket Item 6-2 (Erie County defendants); Docket Item 12 (New York defendants); Docket Item 13-1 (Town of Lewiston defendants); Docket Item 16-3 (Niagara Falls defendants); Docket Item 17-4 (Niagara County defendants); Docket Item 18-1 (Buffalo defendants).[8]  The Court will first address the defendants' argument that Baumeister engaged in improper "group pleading" by failing to specifically identify which defendants engaged in which conduct.  Next, the Court will address some arguments that involve only certain defendants.  The Court will then analyze Baumeister's federal claims, followed by his state claims.  Finally, the Court will address Baumeister's claim for punitive damages.

## I.    GROUP PLEADING

The defendants first argue that the complaint should be dismissed due to improper "group pleading." *See* Docket Item 6-2 at 10-11; Docket Item 12 at 5-7; Docket Item 13-1 at 18-21; Docket Item 16-3 at 4-5; Docket Item 17-4 at 11-13; Docket Item 18-1 at 5-6.[9]  Generally, "[p]leadings that do not differentiate which defendant was involved

---

[8] The defendants each submitted separate motions making many of the same arguments, and Baumeister filed a separate response to each motion.  Going forward, this Court encourages the parties to file consolidated briefs, when possible, to promote judicial efficiency.

[9] Page numbers in docket citations refer to ECF pagination.

in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017); *see Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (explaining that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff]'s complaint failed to satisfy th[e] minimum [pleading] standard"); *Wright v. Orleans County*, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting that "[g]roup pleading [in a section 1983 case] is insufficient for purposes of [Federal] Rule [of Civil Procedure] 8(a)(2) which requires a short and plain statement of the claim showing that the pleader is entitled to relief" (citation and internal quotation marks omitted)).

But "context matters" when assessing whether a pleading gives sufficient notice. *Bryant v. Monroe County*, 2022 WL 119184, at *10 (W.D.N.Y. Jan. 12, 2022). "For example, in situations involving an alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so." *Id.* Such is the case here.

As Baumeister observes, this case is analogous to *Boehner v. City of Rochester*, 609 F. Supp. 3d 220 (W.D.N.Y. 2022). *See* Docket Item 67 at 11-12. *Boehner* involved excessive force claims stemming from several days of protests during which "unknown Sherriff's Deputies and/or unknown [Rochester Police Department o]fficers shot pepper balls at [the plaintiffs] and used pepper spray on [them]." 609 F. Supp. 3d at 229 (citation and internal quotation marks omitted). The court found that these were "plaintiff-specific allegations regarding known and as-of-yet unknown law enforcement

officers" and that "[g]iven the presence of law enforcement from multiple jurisdictions at the protests, such a claim is not implausible."  *Id.*

Similarly, in *Messina v. Mazzeo*, 854 F. Supp. 116 (E.D.N.Y. 1994), "[t]he complaint . . . allege[d] that all of the[] individual police officers participated in using excessive force when they arrested [the plaintiff], handcuffed him, placed him in the police car, and searched him while at the police station."  *Id.* at 126.  The court found that the plaintiff had satisfied Rule 8 by "alleging that *all* individual defendants participated in the use of excessive force."  *Id.*  "It would be asking too much," the court explained, "for an arrestee to remember and plead the role each of several police officers played in an alleged instance of police brutality."  *Id.*

The crux of the inquiry is whether the complaint "give[s] each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Buari v. City of New York*, 530 F. Supp. 3d 356, 390-91 (S.D.N.Y. 2021) (alteration in original) (quoting *Southerland v. N.Y.C. Hous. Auth.*, 2010 WL 4916935, at *2 (E.D.N.Y. Nov. 23, 2010)).  Baumeister has done that here.  He alleges that the individual officers were present at the scene and participated in wrongfully chasing and beating him.  At this stage, he is not required to more specifically identify each officer's actions.  *See Boehner*, 609 F. Supp. 3d at 229; *Buari*, 530 F. Supp. 3d at 390; *Messina*, 854 F. Supp. at 126.

## II.    NEW YORK STATE DEFENDANTS: ELEVENTH AMENDMENT IMMUNITY

The New York defendants—Moen and Kidder, both state troopers—move to dismiss based on, among other things, Eleventh Amendment immunity.  *See* Docket Item 12 at 8-9.  As Moen and Kidder observe, the complaint alleges that each of them

was "acting under the color of state law in the capacity of agent, servant, and employee [of the New York State Police]."  *See id.* at 9 (alteration in original) (quoting Docket Item 1-10 at ¶¶ 47-48).

"Any request for damages from state officials in their official capacities is barred by the Eleventh Amendment unless the state has waived this immunity or Congress has abrogated it."  *Mayo v. Doe*, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  "Section 1983 does not abrogate state sovereign immunity," *id.* (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)), and Baumeister "has alleged no facts suggesting that [New York] has waived this immunity," *see id.*  Thus, Baumeister's claims against Moen and Kidder in their official capacities must be dismissed.  *See id.* (dismissing claims against state troopers in their official capacities under the Eleventh Amendment).

But any claims against Moen and Kidder in their individual capacities are not barred by the Eleventh Amendment.  *See id.* at 400 (allowing excessive force claim against state trooper in his individual capacity to go forward).  And although not a model of clarity, the complaint appears to assert claims against Moen and Kidder in their individual capacities as well.  *See* Docket Item 71 at 14 ("Despite Moen and Kidder's claims otherwise, [Baumeister] has named each of them in this action and has *not* brought an action against the State of New York."); *id.* (Baumeister's asserting that "the [c]omplaint does allege that Moen and Kidder individually violated [his] constitutional rights" (emphasis and internal quotation marks omitted)); Docket Item 1-10 at ¶ 72 (including Moen and Kidder among the "[i]ndividual [d]efendants").  Thus, some claims

against Moen and Kidder in their individual capacities may proceed, as addressed below.

### III.  CLAIMS AGAINST BUFFALO POLICE DEPARTMENT, LEWISTON POLICE DEPARTMENT, AND NIAGARA FALLS POLICE DEPARTMENT

The Buffalo, Lewiston, and Niagara Falls Police Departments argue that they are not proper defendants because they are not separate legal entities.  *See* Docket Item 13-1 at 6; Docket Item 16-3 at 10; Docket Item 18-1 at 11.  This Court agrees.  *See, e.g.*, *Sathue v. Niagara City Police Dep't*, 2018 WL 550520, at *4 (W.D.N.Y. Jan. 25, 2018) (explaining that "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued"  (alteration in original) (quoting *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017))).  Indeed, Baumeister does not contest that these are improper defendants.  *See* Docket Item 68 at 5 n.2; Docket Item 69 at 6 n.2; Docket Item 70 at 6 n.1.  Baumeister's claims against the Buffalo, Lewiston, and Niagara Falls Police Departments therefore are dismissed.

### IV.  FEDERAL CLAIMS

#### A.  Official Capacity Claims

Baumeister sues the various officers in their personal and official capacities. "Personal[ ]capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  *Graham*, 473 U.S. at 165 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 237-238 (1974)).  "Official[ ]capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is

an agent.'"  *Id.* at 165-66 (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978)); *see, e.g.*, *Ware v. City of Lackawanna*, 2009 WL 3464057, at *2 (W.D.N.Y. Oct. 21, 2009) ("It is settled that a suit against a municipal officer in his official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." (internal quotation marks omitted) (citing *Graham,* 473 U.S. at 165-66)).  Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official[ ]capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Ware*, 2009 WL 3464057, at *2 (quoting *Graham,* 473 U.S. at 166).  And for that reason, "courts routinely dismiss official capacity claims . . . as redundant or duplicative of claims against the municipality itself."  *Id.* at *3 (quoting *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003)).

Such is the case here.  Indeed, Baumeister does not argue that the section 1983 official capacity claims should survive.  *See generally* Docket Items 65, 66, 67, 68, 69, 70, and 71.  The section 1983 official capacity claims therefore are dismissed.

### B.    Excessive Force under Section 1983 (First Cause of Action)

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals."  *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).  "To prevail on an excessive force claim, a plaintiff must show that the amount of force used was objectively unreasonable either as to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury."  *Mayo*, 480 F. Supp. 3d at 400 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989); and *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)).

Baumeister's first cause of action alleges that the individual defendants violated the Fourth Amendment by pursuing him in a high-speed chase and then severely beating him when he was unarmed and cooperating.  *Id.* at ¶¶ 69-73.  Baumeister further alleges that the municipal defendants "failed and omitted to properly train and supervise [their] police officers[] and negligently hir[ed] the [i]ndividual [d]efendants."  *Id.* at ¶ 74.  For the reasons that follow, the first cause of action may proceed against the individual defendants but is dismissed as duplicative against the municipal defendants.

### 1.   Municipal Defendants

In *Monell*, the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor."  436 U.S. at 691 (emphasis omitted).  "[I]n other words," the Court said, "a municipality cannot be held liable under [section] 1983 on a respondeat superior theory."  *Id.* (italics omitted); *see Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (holding that "*Monell*'s bar on respondeat superior liability under [section] 1983 applies regardless of the category of relief sought" (italics omitted)).  Therefore, "a local government may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.

Here, Baumeister pleads a separate *Monell* claim against the several municipal defendants as his fifth cause of action.  *See infra* Section IV.D.  For that reason, the first cause of action against the municipal defendants is duplicative and dismissed.  *See Ware*, 2009 WL 3464057, at *3 (dismissing duplicative claims).

### 2.   Individual Defendants

Baumeister's excessive force claim may proceed against the individual defendants, however.  He alleges, among other things, that after tackling and

restraining him, the individual defendants "beat, struck, punched[,] and kicked [him,] resulting in serious injuries." *See* Docket Item 1-10 at ¶¶ 72-73.  Taking the allegations in the complaint as true—as this Court must at this stage—Baumeister has plausibly alleged that the individual defendants used excessive force in violation of the Fourth Amendment.[10]  And, as explained above, this Court finds that at this stage Baumeister has sufficiently identified the individual defendants allegedly involved in the constitutional violations.  *See supra* Section I.

### C.     Failure to Intervene under Section 1983 (Fourth Cause of Action)

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Id.* (internal citations omitted).  "In order for liability to attach,

---

[10] The Niagara County defendants argue that the complaint should be dismissed against them because they are protected by qualified immunity.  *See* Docket Item 17-4 at 42-44, 46.  This Court disagrees.  In fact, "dismissal on grounds of qualified immunity is inappropriate at this stage because 'in the context of excessive force, the Fourth Amendment reasonableness inquiry tends to converge with the qualified immunity reasonableness inquiry.'" *Spencer v. Sullivan County*, 2019 WL 4514011, at *7 n.5 (S.D.N.Y. Sept. 19, 2019) (quoting *Wang v. Vahldieck*, 2012 WL 119591, at *11 (E.D.N.Y. Jan. 9, 2012)).  Thus, because this Court finds that Baumeister's claim for excessive force may proceed, "the [C]ourt likewise concludes that [the defendants are] not entitled to [dismissal] on the basis of qualified immunity." *Id.* (last alteration in original) (quoting *Wang*, 2012 WL 119591, at *11).  Of course, the defendants may raise this issue later in a motion for summary judgment.

there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.* "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.*

Here, Baumeister alleges that each individual defendant "failed to intervene when each [other i]ndividual [d]efendant unreasonably assaulted, committed battery, used excessive force[ and] police brutality, w[as] negligent, abused process, violated [Baumeister]'s [c]ivil [r]ights under 42 U.S.C. § 1983, and did not intervene, despite having a realistic opportunity to prevent the harm." Docket Item 1-10 at ¶ 100. The complaint need not specify which officers directly participated in the underlying constitutional violation and which officers failed to intervene. "Because [Baumeister] properly allege[s] at least one constitutional violation, [he is] entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene." *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012); *see also Mayo*, 480 F. Supp. 3d at 401 (allowing "the failure to intervene claim [to] proceed [past the motion to dismiss stage] to enable [the plaintiff] to conduct discovery to determine the identities and specific actions of the Doe [d]efendants").

Baumeister also alleges that "[t]he [m]unicipal [d]efendants are vicariously liable for the actions of their respective employees under the theory of respondeat superior." Docket Item 1-10 at ¶ 106. As explained above, however, *see supra* Section IV.B.1, such a claim is not viable under section 1983.

Thus, the fourth cause of action may proceed against the individual defendants but not the municipal defendants.

### D.    *Monell* Claims (Fifth Cause of Action)

As explained above, there is no respondeat superior liability under section 1983. *See supra* Section IV.B.1.  Instead, government entities are responsible under section 1983 only when the plaintiff's injury is "inflicted" by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Monell*, 436 U.S. at 694; *see Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (explaining that "local governments are responsible only for their own illegal acts[; t]hey are not vicariously liable under [section] 1983 for their employees' actions" (emphasis and internal quotation marks omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).

A section "1983 plaintiff need not prove that his injury was caused by an explicitly stated municipal rule or regulation."  *Outlaw*, 884 F.3d at 372.  "Absent an express municipal policy, [a] plaintiff may prove a municipal custom, policy[,] or practice in several ways."  *Ramos v. County of Suffolk*, 2009 WL 10708571, at *2 (E.D.N.Y. Sept. 8, 2009).  One way is to demonstrate a "policymaker's acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."  *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (citation and internal quotation marks omitted).  Another way is to show that the municipality "fail[ed] to act," and in doing so "exhibited deliberate indifference to constitutional deprivations caused by subordinates."  *Outlaw*, 884, F.3d at 372-73 (alteration and citation omitted);*see also Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir.

2004) (explaining that a plaintiff "injured by a police officer's use of excessive force may establish a basis for municipal liability by alleging that the [municipality]'s policymakers were 'knowingly and deliberately indifferent to the possibility that its police officers were wont' to violate the constitutional rights of arrestees" (quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986))).  "[T]o proceed on a deliberate-indifference theory, a plaintiff must first establish 'that the need for more or better supervision to protect against constitutional violations was obvious.'"  *Outlaw*, 884 F.3d at 373 (second set of internal quotation marks omitted) (quoting *Amnesty Am.*, 361 F.3d at 127).

### 1.    Custom, Policy, or Practice Claim

Baumeister first alleges that "[u]pon information and belief," it was the municipal defendants' "custom, practice, and/or policy [to] condon[e] police misconduct by their respective deputies and officers."  Docket Item 1-10 at ¶ 112.  More specifically, Baumeister says that "when the [i]ndividual [d]efendants tackled, beat, struck, punched[,] and kicked [him], resulting in severe injuries, they were acting pursuant to the custom[s], practice[s], and/or polic[ies] of their respective employers and/or supervisors . . . which condone use of force without justification."  *Id.* at ¶ 111.

But the only facts Baumeister alleges in support of his conclusory allegation of a policy, custom, or practice are those underlying the alleged constitutional violation against him.  He does not include any factual allegations about any other incidents that might raise an inference of "a practice so persistent and widespread that . . . supervisory authorities must have been aware" of it.  *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order).  And the Second Circuit

has noted that a policy of acquiescing in or ratifying unlawful conduct "cannot be inferred from the failure of those in charge to discipline a single . . . officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct."  *Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (citation and internal quotation marks omitted).  For that reason , Baumeister has failed to state a *Monell* claim based on an established policy, practice, or custom.

### 2.        Deliberate Indifference Claims

Baumeister claims that the municipal defendants were deliberately indifferent to constitutional violations when they failed to train, supervise, discipline, and screen their police officers.  Docket Item 1-10 at ¶ 110; *see Tirado v. City of New York*, 2021 WL 11646299, at *9 (S.D.N.Y. Jan. 25, 2021) (explaining that "[m]unicipal liability can also be established through a municipal policymaker's failure to appropriately train, supervise, discipline, or screen municipal employees where such a failure amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" (citation and internal quotation marks omitted)).  The Court will address each theory in turn.

#### a.        Failure to Train

"[A] municipality can be liable [under section 1983] for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training."  *Amnesty Am.*, 361 F.3d at 129 (citing *City of Canton v. Harris,* 489 U.S. 378, 387-90 (1989)).  To succeed on a *Monell* claim based on the failure to train, a plaintiff "must establish that

'the [municipal employee]'s shortcomings . . . resulted from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." *Id.* at 129-30 (quoting *City of Canton*, 489 U.S. at 390-91). "The elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into respondeat superior liability." *Id.* at 130 (italics omitted). In other words, the plaintiff must show that the training deficiency was the result of municipal policy and not simply a failure of its employees. *See id.* at 129-30.

In *City of Canton*, the Supreme Court "offered as an example of deliberate indifference a municipality's failure to train police officers on the proper use of deadly force." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (citing *City of Canton*, 489 U.S. at 390 n.10). There, the Court explained that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," and " arm[s] its officers with firearms, in part to accomplish this task." *City of Canton*, 489 U.S. at 390 n.10. Under those circumstances, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious' that failure to do so would properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* (internal citation omitted).

But a plaintiff cannot raise a viable claim simply by asserting that deficient training caused a constitutional violation. *See Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order). Instead, "[a] pattern of similar

18

constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect," the Supreme Court has explained, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Baumeister relies on the Second Circuit's statement in *Amnesty America* that "[i]t is unlikely that a plaintiff would have information about the [municipality]'s training programs or about the cause of the misconduct at the pleading stage, and therefore [the plaintiff] need only plead that the city's failure to train caused the constitutional violation." *See, e.g.*, Docket Item 67 at 18 (quoting *Amnesty Am.*, 361 F.3d at 130 n.10). But *Amnesty America* predated *Twombly* and *Iqbal*. And "after *Twombly* and *Iqbal*, courts generally require that [plaintiffs] 'provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train.'" *Buari*, 530 F. Supp. 3d at 400 (quoting *Tieman v. City of Newburgh*, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015)).

Indeed, the Second Circuit has explicitly stated that "[w]hile it may be true that [section] 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms*, 480 F. App'x at 631 n.4 (internal citation omitted); *see Collins v. City of New York*, 923 F. Supp. 2d 462, 478 (E.D.N.Y. 2013) (noting that under *Iqbal*, a plaintiff "must allege, not only a viable [failure to train] theory, but facts that render the theory plausible"). Accordingly, a plaintiff must "allege

facts that support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries."  *Tieman*, 2015 WL 1379652, at *22 (collecting cases).

"There are a number of ways that plaintiffs can plausibly allege a [section] 1983 claim for municipal liability premised on a failure to train theory without having detailed knowledge of a municipality's training programs."  *Simms*, 480 F. App'x at 631 n.4.  "For example, plaintiffs can meet their pleading obligations in this respect by alleging facts indicating '[a] pattern of similar constitutional violations by untrained [municipal] employees.'"  *Id.* (alterations in original) (quoting *Connick*, 563 U.S. at 62).  But, as in *Simms*, "[n]o such facts are alleged here."  *See id.*  Put another way, Baumeister provides no factual support for his failure to train allegations other than the single incident here, which is insufficient to support a *Monell* claim.  *See Bradley v. City of New York*, 2009 WL 1703237, at *2 (E.D.N.Y. June 18, 2009) (explaining that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker" (alteration in original) (quoting *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823-24 (1985))).

This insufficiency is heightened by the fact that Baumeister does not separate his allegations about municipal policy.  Rather, he makes one set of allegations against all the various municipal defendants despite the fact that each is a distinct municipality with different leadership and, presumably, different policies and training programs.  *See*

Docket Item 1-10.  Thus, Baumeister has failed to state a viable *Monell* claim based on failure to train.

                b.     *Failure to Supervise or Discipline*

"Under the failure to supervise or discipline theory, a plaintiff must show that 'the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct) . . . [and] that such a failure of supervision or discipline was tantamount to deliberate indifference.'"  *Buari*, 530 F. Supp. 3d at 400 (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2018)).  More specifically, a plaintiff can demonstrate deliberate indifference by showing that "the need for more or better supervision to protect against constitutional violations was obvious," but that the policymaker made "no meaningful attempt' to forestall or prevent the unconstitutional conduct."  *Id.* (quoting *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995)).

Like a failure to train claim, a failure to supervise or discipline claim generally must allege facts demonstrating that other prior incidents put supervisors on notice.  For that reason, courts in the Second Circuit routinely dismiss *Monell* claims based on a single instance of failing to discipline an employee after one alleged unconstitutional event.  *See, e.g.*, *Santiago v. City of Rochester*, 2022 WL 856780, at \*4 (W.D.N.Y. Mar. 23, 2022) (failure to discipline employee "after the incident [at issue] does not, standing alone, . . . 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*'" (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983))); *Askew v. Lindsey*, 2016 WL 4992641, at \*5 (S.D.N.Y. Sept. 16, 2016) (collecting cases holding that a single failure to discipline "cannot give rise to an inference of deliberate indifference without further evidence of a

municipal policy or practice").  Again, Baumeister has not pleaded any facts demonstrating that any municipal supervisors were on notice of a need for better supervision or discipline and therefore has failed to state a claim on these theories.

c.      *Failure to Screen*

To establish a failure to screen *Monell* claim, "a plaintiff must plead facts to support an inference that the municipality's hiring of the individual reflected 'deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision.'"  *Tirado*, 2021 WL 11646299, at *12 (alteration in original) (quoting *Lehal v. Cent. Falls Det. Facility Corp.*, 2016 WL 7377238, at *8 (S.D.N.Y. Nov. 21, 2016)).  But Baumeister "does no more than cursorily state a theory of liability based on the [municipalities'] failure to screen . . . officers and alleges no facts to support that theory."  *Id.*  Put another way, Baumeister fails to allege "any facts to support an inference that the [municipalities] failed to appropriately screen the correction officers [they] hired."  *Id.*  Thus, Baumeister's "claim for municipal liability on the failure to screen must be dismissed."  *See id.*

* * *

In sum, Baumeister's complaint fails to state a claim under *Monell*.  Baumeister alternatively requests "leave to amend his [c]omplaint, as necessary," Docket Item 67 at 25, but he has not provided a proposed amended complaint.  *See* Loc. R. Civ. P. 15 (a)-(b) (requiring "[a] movant seeking to amend . . . a pleading" to provide "the proposed amended pleading" with the changes identified in redline).  Thus, this Court has no way to know whether such amendment would be futile.

But particularly because Baumeister filed his complaint in state court, this Court will give him another chance by dismissing his *Monell* claims without prejudice to his

moving to amend his complaint to include additional facts supporting those claims.  The Court cautions Baumeister, however, that he must include sufficient detail as to the alleged failings of each municipal defendant in order to state a viable *Monell* claim against that defendant.

### E.     Supervisory Liability under Section 1983 (Sixth Cause of Action)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)).  Thus, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  It is not enough to assert that the defendant is a "link[] in the [entity's] chain of command." *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (citation omitted).

Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.  For example,

> [t]he [supervisory] defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong.   A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.  Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Wright*, 21 F.3d at 501  (alterations omitted) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).  "In addition, supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional

rights of [individuals] by failing to act on information indicating that unconstitutional practices are taking place." *Id.* (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983)).

Baumeister alleges that Sheriffs Garcia and Filicetti "and the supervisory officer [d]efendants included among [d]efendants 'JOHN DOES #1-20,' the names being unknown but who[] are intended to be supervisors of the [m]unicipal [d]efendants, each violated [Baumeister's] rights under the United States Constitution, through 42 U.S.C. §1983." Docket Item 1-10 at ¶ 121. He further alleges that Garcia and Filicetti "maintained, operated, managed, controlled[,] and staffed" their respective sheriff's offices and "were responsible for the supervision, administration, policy practices, procedures[,] and customs of [those offices]," including "hiring, training, discipl[ining,] and control[ling]" their staff." *Id.* at ¶¶ 51-52, 55-56. According to Baumeister, Garcia and Filicetti "were responsible for the pervasive and entrenched pattern of misconduct by [those offices] relating to utilizing force without justification, including the use of excessive force in effectuating arrests[ and the] failure . . . to discipl[in]e officers that engage in misconduct." *Id.* at ¶¶ 51, 55.

These vague and conclusory allegations do not contain any specific facts that plausibly allege that either Garcia or Filicetti—or any of the supervisory John Doe defendants—had any personal involvement in the alleged constitutional violations. But this Court again will dismiss these claims without prejudice to Baumeister's moving to amend his complaint to remedy this deficiency.

## V.   STATE LAW CLAIMS

### A.   Notice of Claim

The Erie County defendants argue that Baumeister's claims against the individual defendants should be dismissed because Baumeister failed to name them in his notice of claim under New York, General Municipal Law Section 50-e.  *See* Docket Item 6-2 at 14-15.  This Court disagrees.

As an initial matter, Baumeister's notice of claim did include the individual officers either by last name or as "John Doe" defendants.  *See* Docket Item 1-12.  What is more, as Baumeister observes, section 50-e(2) does not require a plaintiff to individually name every municipal employee accused of wrongdoing, and the cases to the contrary that the Erie County defendants cite have been overruled.  *See* Docket Item 67 at 18-20 (citing *Wiggins v. City of New York*, 201 A.D.3d 22, 159 N.Y.S.3d 392 (1st Dep't 2021)); *see also Goodwin v. Pretorius*, 105 A.D.3d 207, 216, 962 N.Y.S.2d 539, 546 (4th Dep't 2013).  Instead, "[t]he test of the sufficiency of a [n]otice of [c]laim is merely whether it includes information sufficient to enable the municipality to investigate."  *Goodwin*, 105 A.D.3d at 216, 962 N.Y.S.2d at 546 (alteration, citation, and internal quotation marks omitted).  Here, the notice of claim easily passes that test.

### B.   Assault and Battery (Second and Third Causes of Action)

Baumeister asserts state law assault and battery claims against the individual defendants and against the municipal defendants who, Baumeister says, "are vicariously liable for the actions of their respective employees under the theory of respondeat superior."  Docket Item 1-10 at ¶ 86.

### 1.      Named Individual Defendants

"[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim."  *See Pierre-Antoine v. City of New York*, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006).  Thus, like Baumeister's excessive force claim, his assault and battery claims may proceed against the named individual defendants.

### 2.      John Doe Defendants

The Niagara Falls defendants argue that the assault and battery claims should be dismissed against them because their officers are identified only as "John Doe" defendants, and the statute of limitations has expired to name defendants.  *See* Docket Item 16-3 at 6-7.  But Baumeister has not yet had the opportunity to conduct discovery. *See* Docket Item 69 at 18-19.

"Courts typically refrain from dismissing suits against 'John Doe' defendants 'until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials[.]'"  *Kearse v. Lincoln Hosp.*, 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009) (quoting *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998)).  "At the same time, however, '[i]t is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party sued.'"  *Balkum v. Leonard*, 65 F. Supp. 3d 367, 369 (W.D.N.Y. 2014) (quoting *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir.1999)).  That being said, a "[p]laintiff may be able to relate back his claims [under Federal Rule of Civil Procedure] 15(c)(1)(A)."  *Id.* (citing *Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013)).

Here, there is no dispute that it has been more than a year—the statute of limitations for an intentional tort in New York, *see* N.Y. C.P.L.R. § 215(3)—since the conduct alleged in the complaint occurred.  But because Baumeister has not yet had the opportunity to conduct discovery, this Court will not dismiss the John Doe defendants at this juncture.  If and when Baumeister identifies those defendants and seeks to amend his complaint, this Court will determine whether the proposed amendment properly relates back under Rule 15(c)(1)(A).

### 3.    Erie and Niagara Counties

Erie and Niagara Counties argue that they cannot be held vicariously liable for the conduct of their sheriffs or their sheriffs' deputies.  *See* Docket Item 6-2 at 6-8; Docket Item 17-4 at 26.  This Court agrees.

"It is well established in New York State that a county cannot be held liable under the doctrine of respondeat superior for the actions of its sheriff or sheriff's deputies" unless the county enacts "a local law that expressly assumes liability for the acts of its sheriff and deputies."  *Saleh v. Savage*, 2015 WL 1608839, at *7 (W.D.N.Y. Apr. 10, 2015) (citations omitted); *see Wierzbic v. County of Erie*, 2018 WL 550521, at *10 (W.D.N.Y. Jan. 25, 2018) (explaining that "in the absence of a local law imputing such responsibility, a county may not be held responsible for the negligent acts of local law enforcement pursuant to a theory of respondeat superior" (citing *Villar v. County of Erie*, 126 A.D.3d 1295, 1296-97, 5 N.Y.S.3d 747, 748 (4th Dep't 2015))).  And neither Erie nor Niagara Couty has adopted such a law.  *See Cain v. County of Niagara*, 2022 WL 616795, at *17 (W.D.N.Y. Mar. 2, 2022); *Wierzbic*, 2018 WL 550521, at *10.  As such,

Baumeister's second and third causes of action are dismissed as to Erie and Niagara Counties.

### 4.    Sheriffs Garcia and Filicetti

"It is well[ ]settled under New York law that a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function." *Ryan v. Moss*, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013) (citing *Cash v. County of Erie*, 2007 WL 2027844, *at 5 (W.D.N.Y. July 11, 2007)); *see, e.g.*, *Trisvan v. County of Monroe,* 26 A.D.3d 875, 876, 809 N.Y.S.2d 369, 371 (4th Dep't 2006) (explaining that "a [s]heriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and that principle precludes vicarious liability for [the] torts of [a] deputy").  There is no question that execution of an arrest is a criminal justice function.  *See Ryan*, 2013 WL 956722, at *18. Thus, the second and third causes of action are dismissed as to Sheriffs Garcia and Filicetti.

### 5.    Remaining Municipal Defendants

The remaining municipal defendants are a different story, however.  "The law in New York is well established that a 'New York [municipal] employer . . . is liable for intentional torts, such as assault and battery, committed by its employees provided that the tort is committed within the scope of the [employee]'s employment."  *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 603 (W.D.N.Y. 2019) (quoting *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006)); *see also Graham v. City of New York*, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013) ("New York courts have held municipalities liable under a theory of respondeat superior for . . . assault and battery claims" (collecting

cases)); *Lepore v. Town of Greenburgh*, 120 A.D.3d 1202, 1204, 992 N.Y.S.2d 329, 332 (2d Dep't 2014) ("Unlike cases commenced under 42 U.S.C. § 1983, municipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees").  Here, Baumeister has alleged that the individual officers were acting in the scope of their employment during the alleged wrongdoing.  *See* Docket Item 1-10 at ¶¶ 40-42.  The assault and battery claims against the City of Buffalo, the City of Niagara Falls, the Village of Lewiston, and the Town of Lewiston therefore may proceed.[11]

### C.    Negligence (Seventh Cause of Action)

Baumeister alleges that the individual defendants "breach[ed their] duty to follow policies and procedures."  Docket Item 1-10 at ¶ 125.  He further alleges that "[t]he [m]unicipal [d]efendants are vicariously liable for the actions of their respective employees under the theory of respondeat superior" and that they "negligently fail[ed] to apply training and fail[ed] to supervise [their] officers, employees, and agents."  *Id.* at ¶¶ 125, 128.

#### 1.    Individual Defendants

"Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence."  *Bah v. City of New York*, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d

---

[11] As with the claims against the individual John Doe defendants, this Court will not dismiss the claims against municipal defendants based on the actions of John Doe defendants at this juncture.  If and when Baumeister identifies those defendants and seeks to amend his complaint, this Court will determine whether the proposed amendment properly relates back under Rule 15(c)(1)(A).

Cir.1993); and *Babikian v. Nikki Midtown, LLC*, 60 A.D.3d 470, 471, 875 N.Y.S.2d 20, 21 (1st Dep't 2009)).  Thus, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."  *Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 171 (W.D.N.Y. 2020) (quoting *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000)).  "The question is not of alternate pleadings arising out of the same conduct, but of a single set of facts which if proved can only provide the basis for one or more intentional torts (which themselves may be alleged alternatively)."  *Id.* (quoting *Vilkhu v. City of New York*, 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008)); *see also Bah*, 2014 WL 1760063, at *13 ("Though litigants may allege alternate, or inconsistent, claims in a pleading, [Fed. R. Civ. P. 8(d)], when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed.").

With regard to his negligence claim, Baumeister alleges that "the alleged incident hereinbefore described, and the resultant injuries were caused as the result of the negligence, carelessness, recklessness, and unlawful conduct on the part of the [d]efendants."  Docket Item 1-10 at ¶ 125.  In other words, Baumeister's negligence claim is based on the same facts as his intentional torts and constitutional violations.  As such, the negligence claim against the individual defendants is dismissed without prejudice.[12]  *See Forbes*, 612 F. Supp. 3d at 171; *Bah*, 2014 WL 1760063, at *13.

---

[12] As the complaint now pleads the facts, only intentional torts are alleged as to the individual defendants.  Baumeister may move to amend his complaint, if possible and he so chooses, to include specific facts that might give rise to an inference of negligence on the part of the individual defendants.

### 2.   Municipal Defendants

There are two ways that a municipal employer can be held liable for negligence based on the acts of an employee.  If the employee acted within the scope of . . . employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of respondeat superior."  *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (italics omitted) (citing *Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)).  "A claim for negligent hiring or supervision," on the other hand, "can only proceed against an employer for an employee acting *outside* the scope of her employment."  *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158, at *8 (S.D.N.Y. Apr. 15, 2004) (emphasis added) (citing *Murns v. City of New York,* 2001 WL 515201, at *5 (S.D.N.Y. May 15, 2001)).  Here, Baumeister alleges both types of liability.  The Court will address each in turn.

### a.   Respondeat Superior Liability

"Respondeat superior is not an independent cause of action, but a theory that must attach to an underlying claim"—in this case, the negligence of the deputies and officers.  *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011).  In other words, "if the employee[s were] not negligent, there is no basis for imposing liability on the employer."  *Velez*, 730 F.3d at 137 (quoting *Karoon*, 241 A.D.2d at 324, 659 N.Y.S.2d at 29).

As explained above, Baumeister has failed to state a negligence claim against the officers and deputies.  *See supra* Section V.C.1.  Thus, the municipal employers cannot be held vicariously liable for negligence and that claim is dismissed without prejudice.

b. *Negligent Training and Supervision*

As noted above, "[t]o maintain a claim against a municipal employer for the negligent . . . training [or supervision] of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of . . . employment." *Velez*, 730 F.3d at 136-37 (citation and internal quotation marks omitted).  Here, Baumeister explicitly alleges that the defendants were acting within the scope of their employment. *See* Docket Item 1-10 at ¶¶ 32-58.  Thus, the complaint, as written, does not state a claim for the municipalities' negligent failure to train or supervise.[13]

Baumeister argues, however, that "[i]n the event that the Court were to find that the individually named [d]efendants were not acting within the scope of their employment at the time they brutally attacked [him]," then he would have a claim for negligent training or supervision.  *See, e.g.*, Docket Item 68 at 10.  But based on Baumeister's complaint, this Court sees no basis for finding that the officers were acting outside the scope of their employment.

Under New York law, "an employee will be considered within the scope of his employment so long as he is discharging his duties, no matter how irregularly, or with what disregard of instructions." *Powell v. City of Jamestown*, 2022 WL 1913581, at *20 (W.D.N.Y. June 3, 2022); (quoting *White v. Montesano*, 466 F. Supp. 3d 331, 335 (W.D.N.Y. 2020)).  In contrast, "conduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely

---

[13] The Niagara County defendants also argue that the claim for negligent training and supervision was not included in Baumeister's notice of claim.  *See* Docket Item 17-4 at 29-30.  On the contrary, the notice of claim specifically states that the defendants "fail[ed] and/or omit[ted] to properly and adequately train, supervise, [and] instruct its police officers and/or employees."  Docket Item 1-12 at ¶ 6.

personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties." *Id.* (quoting *White*, 466 F. Supp. 3d at 335).  The test for scope of employment boils down to "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Pizzuto v. County. of Nassau*, 239 F. Supp. 2d 301, 315 (E.D.N.Y. 2003) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 391 N.E.2d 1278, 1281 (N.Y. 1979)).  Thus, in cases where on-duty police officers are alleged to have used excessive force in effectuating an arrest, courts routinely find that those officers were acting in the course of their employment. *See, e.g.*, *Powell*, 2022 WL 1913581, at *21; *Dorsey v. City of Albany Police Dep't*, 2016 WL 11605138, at *3 (N.D.N.Y. Apr. 13, 2016).[14]

For example, in *Powell*, the plaintiff alleged several incidents of alleged excessive force and failure to intervene, including that "[i]n the process of restraining [the plaintiff], officers assaulted, battered, slammed [him] to the ground, and seized [him] without cause or provocation." 2022 WL 1913581, at *3 (citation and internal quotation marks omitted).  The court explained that "[s]ince law enforcement officers

---

[14] In contrast, cases in which courts have found police officers to be acting outside the scope of their employment generally involve off-duty officers performing work unrelated to their job responsibilities. *See, e.g.*, *Mahmood v. City of New York*, 2003 WL 21047728 (S.D.N.Y. 2003) (off-duty police officer who, during a personal altercation, identified himself as a police officer and then assaulted a motorist was not furthering police business); *Schenectady Police Benevolent Ass'n. v. City Of Schenectady*, 299 A.D.2d 717, 750 N.Y.S.2d 666 (3d Dep't 2002) (off-duty police officer who falsely arrested a woman who rejected his romantic advances was not acting within the scope of his employment); *Stavitz v. City of New York*, 98 A.D.2d 529, 471 N.Y.S.2d 272  (1st Dep't 1984) (off-duty police officer who entered his neighbor's home, assaulted his neighbor and neighbor's son, and then arrested them was acting for purely personal reasons).

'often must use some degree of force to make arrests,' municipalities can foresee that their officers will use force 'given the nature of police work.'"  *Id.* at *20 (quoting *Dorsey*, 2016 WL 11605138, at *3).  Thus, the court found, although the plaintiff had alleged that the "[d]efendants used excessive force when they arrested him, the allegations in the [c]omplaint—even in the light most favorable to [the plaintiff]—d[id] not plausibly suggest a departure from normal methods 'so substantial as to remove the officers' actions from the scope of their employment.'"  *Id.* at *21-22 (alterations omitted) (quoting *Dorsey*, 2016 WL 11605138, at *3).  And, the court noted, the plaintiff "himself [had] allege[d] that [the d]efendants were acting within the course and scope of their duties."  *Id.* at *22; *see also Mustafa v. Povero*, 2017 WL 4169339, at *7 (Sept. 20, 2017) (dismissing "negligent training/supervision claim[s]" in excessive force case where complaint alleged that officers "were acting within the scope of their employment at all times").  Thus, the court dismissed the plaintiff's claims for negligent training and supervision.

The same is true here.  Based on the facts alleged in Baumeister's complaint, this Court sees no basis to find that the officers were acting outside the scope of their employment.  Baumeister's negligence claims against the municipal defendants therefore are dismissed.  As with the fifth and sixth causes of action, however, this dismissal is without prejudice to Baumeister's moving to amend his complaint to include allegations that plausibly support a negligence claim.

## VI.  PUNITIVE DAMAGES

The complaint includes a demand for punitive damages.  As the defendants observe, municipalities are immune from claims of punitive damages in a section 1983 action.  *See* Docket Item 6-2 at 15; Docket Item 13-1 at 23; Docket Item 16-3 at 10;

Docket Item 17-4 at 48; *see also City of Newport v Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).  In fact, Baumeister does not dispute that he may not recover punitive damages against the municipal defendants.  *See, e.g.*, Docket Item 69 at 29.  And so Baumeister may not recover punitive damages from the municipal defendants.

With respect to the defendants sued in their individual capacities, at this stage Baumeister "is merely required to make plausible allegations which, if true, would support a claim for punitive damages."  *Wilburn v. City of Albany*, 2014 WL 2532477, at *3 (N.D.N.Y. June 5, 2014).  And Baumeister has done so by alleging that he was brutally beaten by various law enforcement officers.  "While these allegations may ultimately be unsubstantiated on a fuller record, they are sufficient at this stage to survive a motion to dismiss for failure to state a claim."  *See id.*  Accordingly, Baumeister's punitive damages claims against the individual defendants may proceed.

## **CONCLUSION**

For all the above reasons, this Court GRANTS IN PART and DENIES IN PART the defendants' motions to dismiss, Docket Items 11, 13, 16, 17, and 18, and for judgment on the pleadings, Docket Item 6, as follows:

All claims against the Buffalo Police Department, Lewiston Police Department, and Niagara Falls Police Department, as well as all federal official capacity claims, are dismissed.

The motions are DENIED as to the first and fourth causes of action (excessive force and failure to intervene under section 1983) with respect to the individual defendants but are GRANTED with respect to Garcia, Filicetti, and the municipal defendants.

The motions are DENIED as to the second and third causes of action (assault and battery under state law) with respect to the individual defendants, the City of Buffalo, the City of Niagara Falls, the Village of Lewiston, and the Town of Lewiston but are GRANTED with respect to Erie County, Niagara County, Garcia, and Filicetti.

Additionally, the fifth, sixth, and seventh causes of action (*Monell*, supervisory liability, and negligence claims) are dismissed without prejudice to Baumeister's moving to amend his complaint by **October 21, 2024.**  Any such motion must attach a proposed redlined amended complaint correcting the deficiencies outlined in this decision and order and a memorandum of law explaining why, as to each cause of action, such amendment is not futile.  The defendants' time to answer the complaint is tolled until this Court decides Baumeister's motion to amend or, if Baumeister does not move to amend, until **November 12, 2024**.

Baumeister's claim for punitive damages may proceed against the individual defendants but is dismissed as to the municipal defendants.


SO ORDERED.

Dated:   September 30, 2024
         Buffalo, New York


                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE